IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND DIVISION

| | |
|---|---|
| ON SITE ENERGY COMPANY, INC.,   ) | |
|           ) | |
|           Plaintiff,   ) | Case No. 2:10-cv-1671-JS-WDW |
|           ) | |
|           v.   ) | **PLAINTIFF'S** |
|           ) | **REQUESTS FOR** |
|           ) | **JURY INSTRUCTIONS** |
| MTU ONSITE ENERGY CORP.,   ) | |
|           ) | |
|           Defendant.   ) | |
|           ) | (Fed.R.Civ.P. 51(a)) |

On Site Energy, plaintiff, request that the following instructions be given to the jury as set forth in the following pages. Those listed below preceded with section numbers are based upon *Model Jury Instructions Copyright, Trademark and Trade Dress Litigation* (Am. Bar Ass'n Publ'g 2008). Those listed below preceded with "Special" are requested due to the particular circumstances of the case.

### Preliminary

§ 2.1     Preliminary Instruction—Given at the Start of Trial

### Definitions

§ 2.2.1    Mark

§ 2.2.2    Trademark

§ 2.2.3    Service Mark

Special    Forward Confusion versus Reverse Confusion

Acquiring Trademark or Service Mark Rights

§ 2.3.1    Generally

§ 2.3.5    Validity

§ 2.3.6    Secondary Meaning

§ 2.3.7    Effect of a Federal Registration

Infringement

§ 2.4.1    Infringement Generally

§ 2.4.2    Infringement of a Federally Registered Mark—Elements

§ 2.4.3    Infringement of Unregistered Mark—Elements

§ 2.4.4    Likelihood of Confusion Factors *[Polaroid Factors amended for reverse confusion]*

Defenses

§ 2.5.2    Mark Invalidity—Registered Mark

§ 2.5.3    Mark Invalidity—Unregistered Mark

Special    Fraud—Failure to Disclose Use by Others

§ 2.5.4    Mark Invalidity—Generic Marks

§ 2.5.5    Mark Invalidity—Lack of Distinctiveness

Relief

§§2.8.1, 2.8.2    Monetary Relief

Special    Damages—Reasonable Royalty

Special    Intentional Infringement

July 16, 2012                    Respectfully submitted,

                                 s/Kurt N. Jones
                                 Kurt N. Jones
                                 Woodard, Emhardt, Moriarty,
                                 McNett & Henry LLP
                                 111 Monument Circle, Suite 3700
                                 Indianapolis, IN  46204-5137
                                 Telephone:  317-634-3456
                                 Facsimile:  317-637-7561
                                 kjones@uspatent.com

#683877

Certificate Of Service

I hereby certify that on July 16, 2012, On Site Energy's Requests for Jury Instructions was filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, and/or the Eastern District's Local Rules, and/or the Eastern District's Rules on Electronic Service upon the following parties:

| | | |
|---|---|---|
| Kathleen E. McCarthy<br>King & Spalding LLP<br>1185 Avenue of the<br>Americas<br>New York, NY 10036<br>212-556-2345<br>kmccarthy@kslaw.com | Amy E. Jones<br>King & Spalding LLP<br>1180 Peachtree Street<br>Atlanta, GA 30309<br>404-572-4600<br>404-572-5170 (fax)<br>ejones@kslaw.com | Erik J. Dykema<br>King & Spalding LLP<br>1185 Avenue Of The<br>Americas<br>New York, NY 10036<br>212-556-2100<br>212-556-2222 (fax)<br>edykema@kslaw.com |
| Yuridia Caire<br>King & Spalding<br>333 Twin Dolphin Drive<br>Suite 400<br>Redwood City, CA 94065<br>650-590-0703<br>650-590-1900 (fax) | Bruce W. Baber<br>King & Spalding LLP<br>1180 Peachtree Street<br>Atlanta, GA 30309<br>404-572-4600<br>404-572-5100 (fax)<br>bbaber@kslaw.com | David S. Desmond<br>Van Nostrand & Martin<br>P.O. Box 307<br>53 Broadway<br>Amityville, NY 11701<br>631-264-0303<br>631-264-0314 (fax)<br>daviddesmond@optonline.net |
| Linda D Kennedy<br>Rader, Fishman & Grauer<br>PLLC<br>39533 Woodward Avenue<br>Suite 140<br>Bloomfield Hills, MI 48304<br>248-594-0600<br>248-594-0610 (fax) | Bill C. Panagos<br>Rader, Fishman & Grauer<br>PLLC<br>39533 Woodward Ave<br>Suite 140<br>Bloomfield Hills, MI 48304<br>248-594-0600<br>248-594-0610 (fax)<br>bcp@raderfishman.com | |

s/Kurt Jones
Kurt N. Jones

JURY INSTRUCTION NO._____

*(Preliminary Instruction—Given at the Start of Trial)*

Plaintiff On Site Energy seeks damages against Defendant MTU Onsite Energy for trademark or service mark infringement. Defendant denies infringement and contends that its use of the mark is lawful for reasons I will explain to you later. To help you understand the evidence that will be presented in this case, I will explain some of the legal concepts you will hear about during the trial.

*Definition of a Trademark:* A trademark is a word, name, symbol, device, or a combination of these items that indicates the source of goods.

*Definition of a Service Mark:* A service mark is a word, name, symbol, device, or a combination of these items that indicates the source of services.

*Definition of a Mark:* The term "mark" is a generic reference that includes all categories of trademarks and service marks. The owner of a mark has the right to prevent others from using the same mark or a similar mark that is likely to cause confusion in the marketplace.

*How a Trademark or Service Mark Is Obtained:* A person acquires the right to prevent others from using the same mark or a similar mark that is likely to cause confusion in the marketplace by being the first to use it in the marketplace.

*Federal Registration:* The owner of a mark may apply to obtain a certificate of registration issued by the United States Patent and Trademark Office by submitting an application showing use of the mark in commerce. After obtaining a registration certificate, the owner, in an action for infringement, may rely on the certificate to create a presumption that the mark is valid, that the registrant owns it, and that the owner has the right to prevent others from using the same mark or a similar mark that is likely to cause confusion in the marketplace in connection with the type of goods or services specified in the certificate. These presumptions in favor of the owner created by the certificate of registration can be overcome or rebutted only by certain types of evidence that I will describe to you later as appropriate.

*Likelihood of Confusion:* To prove infringement, On Site Energy must prove, by a preponderance of the evidence, that MTU Onsite Energy, without plaintiff's consent, used in commerce a reproduction, copy, counterfeit, or colorable imitation of plaintiff's mark in connection with the distribution or advertisement of goods or services, such that defendant's use of the mark is

likely to cause confusion as to the source of the goods or services. It is not necessary that the mark used by defendant be an exact copy of plaintiff's mark. Rather, plaintiff must demonstrate that, when viewed in its entirety, the mark used by defendant is likely to cause confusion in the minds of reasonably prudent purchasers or users as to the source of the product or service in question.

*Burden of Proof:* On Site Energy has the burden of proving by a preponderance of the evidence that plaintiff is the owner of a valid trademark or service mark and that defendant infringed that trademark or service mark.

MTU Onsite Energy contends that Plaintiff's registered mark is invalid. Defendant has the burden of proving by a preponderance of the evidence that the registered mark is invalid. Preponderance of the evidence means a fact is proven if the evidence persuades you that the fact is more probably true than not true.

MTU Onsite Energy also contends that Plaintiff's registered mark is invalid because it was obtained by fraud. Defendant has the burden of proving by clear and convincing evidence that the registration was obtained by fraud. Clear and convincing evidence is evidence that produces in your mind a firm belief or conviction as to the truth of the matter. Clear and convincing evidence involves a greater degree of persuasion than is necessary to meet the preponderance of the evidence standard; however, proof to an absolute certainty is not required.

*Source: Model Jury Instructions Copyright, Trademark and Trade Dress Litigation*, § 2.1, 141-143 (Am. Bar Ass'n Publ'g 2008); also *Pattern Jury Instructions of the District Judges Association of the Fifth Circuit, Civil Cases,* Instruction No. 2.14 (2009).

_____ GIVEN

_____ GIVEN AS MODIFIED

_____ DENIED

JURY INSTRUCTION NO._____

*MARK*

The term "mark" is a generic reference that includes all categories of trademarks and service marks.

*Source:  Model Jury Instructions Copyright, Trademark and Trade Dress Litigation*, § 2.2.1, 144 (Am. Bar Ass'n Publ'g 2008).

_____ GIVEN

_____ GIVEN AS MODIFIED

_____ DENIED

JURY INSTRUCTION NO._____

*TRADEMARK*

A trademark is any word, name, symbol, device, or any combination thereof used by a person to identify and distinguish that person's goods and indicate the source of the goods.

*Source:  Model Jury Instructions Copyright, Trademark and Trade Dress Litigation,* § 2.2.2, 145 (Am. Bar Ass'n Publ'g 2008).

_____ GIVEN

_____ GIVEN AS MODIFIED

_____ DENIED

JURY INSTRUCTION NO._____

*SERVICE MARK*

A service mark is any word, name, symbol, device, or combination thereof used by a person to identify and distinguish that person's services and indicate the source of the services.

*Source:  Model Jury Instructions Copyright, Trademark and Trade Dress Litigation,* § 2.2.3, 145 (Am. Bar Ass'n Publ'g 2008).

_____ GIVEN

_____ GIVEN AS MODIFIED

_____ DENIED

JURY INSTRUCTION NO._____

*FORWARD CONFUSION VERSUS REVERSE CONFUSION*

A likelihood of confusion may be found in two types of situations supporting claims for infringement: "forward" and "reverse." The fundamental issue in both situations is the same—whether the consuming public is likely to be confused about the source of products or services of the respective mark users. In the traditional trademark or service mark infringement case involving forward infringement, the junior user of a mark uses it to sell goods or services based on the misperception that they originate with the mark's senior user, thereby trading on the generally larger and more well-established senior user's good will. Reverse confusion is the opposite—the misimpression that a junior user is the source of the senior user's goods. In reverse confusion, a junior user saturates the market with a mark which is similar to a senior user's mark, and overwhelms the senior user. The public comes to assume that the senior user's products or services are really supplied by the junior user or that the senior user is somehow connected to or associated with the junior user.

*Source:* J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 23:10 (West 2012); *Banff, Ltd. v. Federated Dep't Stores, Inc.*, 841 F.2d 486, 490 (2nd Cir. 1988)("two types of potential confusion allegedly support a claim of infringement: ordinary confusion and reverse confusion. Under the Lanham Act confusion is ordinarily the misimpression that the senior user (Banff) is the source of the junior user's (Bloomingdale's) goods. Reverse confusion is the misimpression that the junior user is the source of the senior user's goods."); *Yarmuth-Dion, Inc. v. D'ion Furs, Inc.*, 835 F.2d 990, 995 (2nd Cir. 1987)(reverse confusion is "an instance in which a person acquainted with the junior user's name becomes confused when confronted with the senior user's name.")

_____ GIVEN

_____ GIVEN AS MODIFIED

_____ DENIED

JURY INSTRUCTION NO._____

*GENERALLY*

The first person to use a trademark or service mark in the marketplace as a source of origin acquires the right to prevent others from using the same or a similar mark that is likely to cause confusion in the marketplace.

*Source:  Model Jury Instructions Copyright, Trademark and Trade Dress Litigation,* § 2.3.1, 149 (Am. Bar Ass'n Publ'g 2008).

_____  GIVEN

_____  GIVEN AS MODIFIED

_____  DENIED

JURY INSTRUCTION NO._____

*VALIDITY*

The first consideration in an infringement lawsuit like this is for you to determine whether On Site Energy's mark is valid. In turn, the first step in determining whether plaintiff's ON SITE ENERY mark is a valid mark is the mark's distinctiveness. Distinctiveness refers to how strongly the mark identifies a product with the plaintiff and is an important factor to consider in assessing whether the mark is valid. To determine if plaintiff has met its burden of showing that ON SITE ENERGY is a valid trademark or service mark, you must first classify it on the spectrum of distinctiveness that I will explain in this instruction. The law provides great protection to distinctive marks. On the other hand, marks that are not as distinctive receive less protection, and marks that are not distinctive are not entitled to any protection.

The law groups trademarks or service marks into four categories according to their relative distinctiveness. These four categories are, in order of distinctiveness: (1) arbitrary or fanciful marks; (2) suggestive marks; (3) descriptive marks; and (4) generic marks.

Plaintiff does not contend that ON SITE ENERGY is either (1) arbitrary or fanciful or (2) suggestive. I will thusly only discuss the last two categories in detail.

*Descriptive Marks.* The third category of marks is descriptive trademarks or service marks. These marks directly identify some characteristic of the products or service to which they are attached such that the average consumer would have little problem understanding the association between the mark and the product or service. For instance, the word "apple" is descriptive when used in the trademark "CranApple" to describe a cranberry-apple juice. Other common types of descriptive marks are those that describe the geographic origins of the product or the name of the person or company who makes or sells the product. Descriptive marks are entitled to protection only if they have acquired secondary meaning in the minds of consumers. I will explain the term "secondary meaning" to you shortly.

*Generic Marks.* The fourth category of marks is generic trademarks or service marks. A mark is generic if it does not identify the source of a product or service, but instead uses the common word or words that an average consumer would use to describe the product or service. For instance, the word "computer" when used to describe a computer is generic, and the word "apple"

when used to describe apples is generic. Generic marks are entitled to no protection.

These are the two categories for you to consider in determining whether ON SITE ENERGY is a valid trademark or service mark.

If you decide that ON SITE ENERGY is descriptive, you will not know if the mark is valid until you consider whether it has gained distinctiveness by acquiring secondary meaning.

If you decide that ON SITE ENERGY is generic, then the mark cannot be distinctive and, therefore, it is not valid and cannot be infringed.

*Source:  Model Jury Instructions Copyright, Trademark and Trade Dress Litigation*, § 2.3.5, 154-157 (Am. Bar Ass'n Publ'g 2008) citing *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 210 (2000); *Two Pesos, Inc. v. Taca Cabana, Inc.*, 505 U.S. 763, 768 (1992); *Kendall-Jackson Winery v. E & J Gallo Winery*, 150 F.3d 1042, 1047 (9th Cir. 1998).

_____  GIVEN

_____  GIVEN AS MODIFIED

_____  DENIED

JURY INSTRUCTION NO._____

*SECONDARY MEANING*

ON SITE ENERGY is valid and entitled to legal protection if the mark has acquired a "secondary meaning." Whether a mark has a "secondary meaning" depends on the recognition that the mark has among prospective purchasers. A mark has a secondary meaning when the public associates it with a single source of the product or service even though the mark itself does not distinguish the product or service. When a mark is unregistered, the burden is on plaintiff to prove by a preponderance of the evidence that a significant number of the consuming public associates the mark with a single source. If plaintiff does this, then the mark has a secondary meaning. The mere fact that plaintiff uses a mark does not mean that the mark has acquired secondary meaning.

The following factors may be considered in determining whether the mark has secondary meaning:

1.  Whether people who purchase the plaintiff's product or service associate the mark with the owner;

2.  Whether the owner has advertised under the claimed mark;

3.  Whether the owner successfully used this mark to increase its sales;

4.  Whether the owner has used the claimed mark for an extended period of time;

5.  Whether the owner's use of the claimed mark was exclusive;

6.  Whether defendant intentionally copied the mark; and

7.  Whether defendant's use of the mark has led to actual confusion.

Unregistered marks are valid and entitled to protection only as broad as the secondary meaning they have acquired.

*Source: Model Jury Instructions Copyright, Trademark and Trade Dress Litigation,* § 2.3.6, 157-158 (Am. Bar Ass'n Publ'g 2008); *Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.,* 973 F.2d 1033, 1041 (2nd Cir. 1992).

_____ GIVEN

_____ GIVEN AS MODIFIED

_____ DENIED

JURY INSTRUCTION NO._____

*EFFECT OF A FEDERAL REGISTRATION*

An owner of a trademark or service mark may obtain a certificate of registration issued by the United States Patent and Trademark Office and may submit that certificate as evidence of the validity and protectibility of the mark. A certificate of registration issued by the U.S. Patent and Trademark Office creates a presumption that the mark is valid and owned by the holder of the certificate. Exhibit 1 is a certificate of registration from the United States Patent and Trademark Office. It was submitted by plaintiff as proof of the validity of its service mark.

However, defendant alleges that the certificate cannot be considered proof of validity of the service mark because ON SITE ENERGY does not have secondary meaning or is generic. Unless defendant proves by a preponderance of the evidence that ON SITE ENERGY does not have secondary meaning or is generic, you must consider the service mark to be conclusively proved as valid. However, if defendant shows that ON SITE ENERGY does not have secondary meaning or is generic by a preponderance of the evidence, then the facts stated in the certificate are no longer conclusively presumed to be correct. You should then consider whether all of the evidence admitted in this case, including this certificate of registration, shows by a preponderance of the evidence that the service mark is valid.

*Source: Model Jury Instructions Copyright, Trademark and Trade Dress Litigation,* § 2.3.7, 159 (Am. Bar Ass'n Publ'g 2008) citing 15 U.S.C. §§ 1057, 1065, 1115(b); *Retail Serv. Inc. v. Freebies Publ'g,* 364 F.3d 535, 542 (4th Cir. 2004); *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.,* 328 F.3d 1061, 1069 (9th Cir. 2003); *Brookfield Commc'ns v. W. Coast Entm't,* 174 F.3d 1036, 1046-47 n. 10 (9th Cir. 1999); *Levi Strauss & Co. v. Blue Bell, Inc.,* 778 F.2d 1352, 1354-55 (9th Cir. 1985).

_____  GIVEN

_____  GIVEN AS MODIFIED

_____  DENIED

JURY INSTRUCTION NO._____

*INFRINGEMENT GENERALLY*

In an action for infringement, the owner of a valid mark may enforce the right to prevent others from using the same or a similar mark that is likely to cause confusion in the marketplace. Anyone who, without the consent of the owner of a valid mark, uses the same or a similar mark in connection with the sale or offering for sale of goods or services in a manner likely to cause confusion among consumers as to the source, affiliation, or sponsorship of goods or services, infringes the mark.

*Source:  Model Jury Instructions Copyright, Trademark and Trade Dress Litigation,* § 2.4.1, 161 (Am. Bar Ass'n Publ'g 2008) citing *inter alia* 15 U.S.C. §§ 1114(1), 1125(a); *Nitro Leisure Prod., L.L.C. v. Acushnet Co.*, 341 F.3d 1356, 1359 (Fed. Cir. 2003) and *Yarmuth-Dion, Inc. v. D'ion Furs, Inc.*, 835 F.2d 990, 992-93 (2nd Cir. 1987).

_____  GIVEN

_____  GIVEN AS MODIFIED

_____  DENIED

JURY INSTRUCTION NO._____

*INFRINGEMENT of a FEDERALLY REGISTERED MARK—ELEMENTS*

To prove infringement of a federally registered mark, On Site Energy must prove, by a preponderance of the evidence, that:

1. On Site Energy owns a mark that is registered in the U.S. Patent and Trademark Office; and

2. MTU Onsite Energy used in commerce, without On Site Energy's consent, a reproduction, copy, counterfeit, or colorable imitation of On Site Energy's mark in connection with the sale, offering for sale, distribution, or advertising of goods or services, which use is likely to cause confusion.

It is not necessary that the mark used by the defendant be an exact copy of the plaintiff's mark. Rather, the plaintiff must demonstrate that, when viewed in its entirety, the defendant's use of his mark is likely to cause confusion in the minds of reasonably prudent purchasers or other relevant members of the public, as to the source, origin, sponsorship, approval or affiliation of the product or service in question.

*Source: Model Jury Instructions Copyright, Trademark and Trade Dress Litigation*, § 2.4.2, 163-164 (Am. Bar Ass'n Publ'g 2008) citing *inter alia* 15 U.S.C. § 1114(1)(a) and *Gruner & Jahr USA Publ'g v. Meredith Corp.*, 991 F.2d 1072, 1077-78 (2nd Cir. 1993).

_____ GIVEN

_____ GIVEN AS MODIFIED

_____ DENIED

JURY INSTRUCTION NO._____

*INFRINGEMENT of UNREGISTERED MARK—ELEMENTS*

To prevail on a claim of infringement of an unregistered mark, On Site Energy must show, by a preponderance of the evidence, that:

1. On Site Energy is the owner of a valid mark through priority of use in commerce through acquisition of secondary meaning; and

2. MTU Onsite Energy's subsequent use in commerce, on or in connection with goods or services, of a word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of On Site Energy with MTU Onsite Energy, or as to the origin, sponsorship, or approval of On Site Energy's goods, services, or commercial activities by another person.

The term "origin," as used here, is not restricted to its geographical meaning, but rather, includes a representation regarding the origination of the product or service, such as from a particular manufacturer or seller.

It is not necessary that the mark used by defendant be an exact copy of plaintiff's mark. Rather, plaintiff must demonstrate that, when viewed in its entirety, defendant's use of its mark is likely to cause confusion in the minds of reasonably prudent purchasers or other relevant members of the public as to the source, origin, sponsorship or approval of the product or service in question, or as to affiliation, connection or sponsorship.

*Source: Model Jury Instructions Copyright, Trademark and Trade Dress Litigation*, § 2.4.3, 165-166 (Am. Bar Ass'n Publ'g 2008) citing *inter alia* 15 U.S.C. § 1125(a)(1)(A) and *Brennan's, Inc. v. Brennan's Rest., L.L.C.*, 360 F.3d 125, 129-30 (2nd Cir. 2004).


_____ GIVEN

_____ GIVEN AS MODIFIED

_____ DENIED

JURY INSTRUCTION NO._____

*LIKELIHOOD of CONFUSION FACTORS*

In evaluating whether or not there is a likelihood of confusion, you are to consider various factors, including those that I will discuss momentarily. These factors are simply a guide to help you determine whether confusion is likely to result from simultaneous use of the two parties' marks. No single factor or consideration is dispositive, and plaintiff need not prove that all, or even most, of the factors listed below are present in any particular case to be successful. Nor are you limited to consideration of only these factors. You must consider and weigh all of the relevant evidence in determining whether there is a likelihood of confusion. Factors you may consider include:

*1. The strength of defendant's mark compared to the strength of plaintiff's mark.* It is the essence of reverse confusion that the senior user's mark will be comparatively weaker—and quite possibly much weaker—than the strength of the junior user. A mark's strength is measured by both its inherent strength (how distinctive it is) and by its acquired strength (the degree of consumer recognition it has obtained in the marketplace). The more that purchasers or users associate a mark uniquely with a single source of a product or service, then the stronger the mark is and the more likely it is that purchasers or users would be confused about the source of the products or services if defendant uses a similar mark.

2. *Degree of similarity or dissimilarity between the two marks.* In evaluating the similarity or dissimilarity of the respective marks, each mark must be considered as a whole. Likelihood of confusion cannot be based on dissection of a mark, that is, on only part of a mark. Although there is nothing improper in giving more or less weight to a particular feature of a mark, the ultimate conclusion as to the similarity or dissimilarity of the marks must rest on consideration of the marks in their entireties. You should consider the overall impression created by the marks, keeping in mind all the things that the general buying public will likely perceive and remember about the marks, including their similarities in sight, sound, and meaning, as well as designs, fonts, colors, and other elements.

3. *Competitive proximity or similarity of the parties' products or services.* If both parties use their marks to market the same, related, or complementary types of products or services, then the likelihood of confusion increases. If the parties' respective goods or services are unrelated, then the likelihood of confusion decreases.

4. *Likelihood that plaintiff will "bridge the gap" between her products or services and defendant's.* If the two parties are marketing different products, the probability that plaintiff will begin selling the same, related, or complementary products to defendant's must also be considered. If that probability is high, then the likelihood of confusion increases; conversely, if that probability is low, the likelihood of confusion decreases.

5. *Actual confusion.* Actual confusion is not required for you to find a likelihood of confusion. However, if defendant's use of his mark has led to instances of actual confusion among relevant consumers, this may be a strong indication that confusion is likely. Even if there are instances of actual confusion, you may conclude that there is no likelihood of confusion if, for example, the instances of actual conclusion were rare and infrequent.

6. *Defendant's intent—in other words, defendant's good or bad faith in adopting and using his mark.* Proof of defendant's intent to confuse or deceive consumers by adopting and using a mark that is the same or similar to plaintiff's mark is not necessary to establish a likelihood of confusion, but is relevant to determining whether or not confusion is likely. In the context of reverse confusion, it is unlikely that a larger and better known junior user intends to trade on the reputation of the lesser-known plaintiff. This factor is therefore less relevant in your reverse confusion inquiry, although any finding that the defendant adopted its mark with intent to cause any form of confusion should weigh in favor of the plaintiff.

7. *The quality of the defendant's products.* The quality of a defendant's product may be relevant to the likelihood of confusion analysis in two ways: (1) an inferior product may cause injury to the plaintiff trademark owner because people may think that the senior and junior products came from the same source; or (2) products of equal quality may tend to create confusion as to the source because of this very similarity.

8. *Sophistication of buyers.* More sophisticated buyers, or purchasers of more sophisticated products or services, are likely to be more careful and discriminating when purchasing those products or services. Consequently, such purchasers may be less likely to be confused by similarities in plaintiff's and defendant's marks. Conversely, if the potential buyers of the products in question are less sophisticated, or if the products in question are commodity items, the likelihood of confusion may increase.

*Source: Model Jury Instructions Copyright, Trademark and Trade Dress Litigation*, § 2.4.4, 167-170 (Am. Bar Ass'n Publ'g 2008) citing *inter alia, Polaroid Corp. v. Polaroid Elec. Corp.*, 287 F.2d 492, 495 (2nd Cir. 1961).

*Hormel Foods Corp. v. Jim Henson Prods., Inc.,* 73 F.3d 497, 505 (2nd Cir.1996)(The quality of a junior user's product may be relevant to the likelihood of confusion analysis in two ways: (1) an inferior product may cause injury to the plaintiff trademark owner because people may think that the senior and junior products came from the same source; or (2) products of equal quality may tend to create confusion as to the source because of this very similarity.)

Factor Nos. 1 and 6 were modified for reverse confusion pursuant to case law. In cases of forward confusion, the first *Polaroid* factor assesses the strength of the senior user's mark. A senior user's relative lack of commercial strength, however, should be accorded less weight in a reverse confusion case. This is because "in a reverse confusion case, the junior user is not trying to take a free ride on the recognition value of a strong, senior mark." McCarthy on Trademarks § 23:10. "Rather, the Court should evaluate the strength of the junior user's mark so as to gauge its ability to overpower the senior user's mark." *Id.; Sunenblick v. Harrell,* 895 F.Supp. 616, 627-28 (S.D.N.Y.1995), *aff'd,* 101 F.3d 684 (2d Cir.1996) (unpublished table decision), *cert. denied,* 519 U.S. 964 (1996).

The sixth factor in the traditional *Polaroid* analysis examines whether the defendant adopted its mark with the intention of capitalizing on the plaintiff's reputation or goodwill. In the context of reverse confusion, it is unlikely that a larger and better known junior user intends to trade on the reputation of the lesser-known plaintiff. This factor is therefore less relevant in a reverse confusion inquiry, although any finding that the defendant adopted its mark with an intent to cause any form of confusion should weigh in favor of the plaintiff. *A & H Sportswear Inc. v. Victoria's Secret Stores, Inc.,* 237 F.3d 198, 232 (3rd Cir.2000).

_____ GIVEN

_____ GIVEN AS MODIFIED

_____ DENIED

JURY INSTRUCTION NO._____

*MARK INVALIDITY—REGISTERED SERVICE MARK*

In defense of On Site Energy's claim for service mark infringement, MTU Onsite Energy claims that plaintiff's registered mark is invalid. The registered service mark is invalid if:

1. The registration was obtained fraudulently;

2. The mark is or has become a generic word or term; or

3. The mark is a merely descriptive word or term and has not acquired distinctiveness.

Defendant MTU Onsite Energy has the burden of proving the registered mark is invalid because of fraud by clear and convincing evidence.

Defendant MTU Onsite Energy has the burden of proving the registered mark is invalid by the remaining two defenses by a preponderance of the evidence.

*Source:  Model Jury Instructions Copyright, Trademark and Trade Dress Litigation*, §§ 2.5.2 176-177 (Am. Bar Ass'n Publ'g 2008) citing 15 U.S.C. § 1115 and Restatement (Third) of Unfair Competition § 14 (1995).

_____ GIVEN

_____ GIVEN AS MODIFIED

_____ DENIED

JURY INSTRUCTION NO._____

*MARK INVALIDITY—UNREGISTERED MARK*

You must also evaluate invalidity as if plaintiff did not have a federal registration. Defendant also claims that ON SITE ENERGY is invalid as an unregistered trademark or service mark. An unregistered mark is invalid if:

1. The mark is or has become a generic word or term; or

2. The mark is a merely descriptive word or term.

Plaintiff has the burden of proving the validity of ON SITE ENERGY as an unregistered mark by a preponderance of the evidence.


*Source:  Model Jury Instructions Copyright, Trademark and Trade Dress Litigation,*
§§ 2.5.3 177 (Am. Bar Ass'n Publ'g 2008) citing 15 U.S.C. § 1115.


_____ GIVEN

_____ GIVEN AS MODIFIED

_____ DENIED

JURY INSTRUCTION NO._____

*FRAUD—FAILURE TO DISCLOSE USE BY OTHERS*

Defendant MTU Onsite Energy asserts that Plaintiff's service mark registration is invalid because plaintiff's agent signed the application oath knowing others were already using the same or similar mark. To prove this defense, MTU Onsite Energy must prove, by clear and convincing evidence, that:

1.  There was in fact another use of the same or a confusingly similar mark at the time the oath was signed;

2.  The other user had legal rights superior to applicant's rights;

3.  Applicant knew that the other user had rights in the mark superior to applicant's and either believed that a likelihood of confusion would result from applicant's use of its mark or had no reasonable basis for believing otherwise; and

4.  Applicant, in failing to disclose these facts to the trademark office, intended to procure a registration to which applicant was not entitled.

Clear and convincing evidence is evidence that produces in your mind a firm belief or conviction as to the truth of the matter. Clear and convincing evidence involves a greater degree of persuasion than is necessary to meet the preponderance of the evidence standard; however, proof to an absolute certainty is not required.

It is important to note that the application oath states that to the best of his or her "knowledge and belief" no other entity "has the right to use" the mark or confusing similar mark "in commerce."

As a result, it is not fraud if the trademark or service mark applicant had a good faith belief that:
(a) it used its mark before the third-party did, or
(b) the difference between the applicant's mark and the third-party's mark prevented a likelihood of confusion, or
(c) the difference between the applicant's goods or services and the third party's goods or services prevented a likelihood of confusion, or
(d) the third-party did not use the term as a mark.

There is no duty to disclose to the subsequent use by others of the same or similar mark to the trademark office. There is also no duty to investigate potential conflicting marks that might be found in a trademark search and therefore there is no duty to investigate when another party might have started using a similar mark.

*Source:* J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* §§ 31:75 to 31:77 (West 2012).

_____  GIVEN

_____  GIVEN AS MODIFIED

_____  DENIED

JURY INSTRUCTION NO._____

*GENERIC MARKS*

A generic word or term cannot be a mark. A word or term is generic if its primary significance to the relevant consumers is the product or service itself and not the source of the product or service. For example, the word "MART" is generic when used in connection with retail outlets.

*Source:  Model Jury Instructions Copyright, Trademark and Trade Dress Litigation*, §§ 2.5.4 178 (Am. Bar Ass'n Publ'g 2008) citing *inter alia* 15 U.S.C. § 1115 and Restatement (Third) of Unfair Competition § 15 (1995).

_____ GIVEN

_____ GIVEN AS MODIFIED

_____ DENIED

JURY INSTRUCTION NO._____

*LACK OF DISTINCTIVENESS*

A word or term may not function as a mark if it lacks distinctiveness. A mark is merely descriptive if it is understood by prospective purchasers to directly describe only the functions, characteristics, use, nature, or ingredients of the goods or services, and does not require the imagination of the prospective purchaser to reach a conclusion as to the nature of the goods or services.

A word or term that is merely descriptive of goods or services lacks distinctiveness and, therefore, may not be protected as a mark, unless the word or term has acquired secondary meaning.

*Source: Model Jury Instructions Copyright, Trademark and Trade Dress Litigation*, §§ 2.5.5 180 (Am. Bar Ass'n Publ'g 2008) citing 15 U.S.C. § 1052 and Restatement (Third) of Unfair Competition § 14 (1995); and *Stix Prods., Inc. v. United Merchants & Mfrs., Inc.*, 295 F.Supp. 479 (S.D.N.Y. 1968).

_____ GIVEN

_____ GIVEN AS MODIFIED

_____ DENIED

JURY INSTRUCTION NO._____

*MONETARY RELIEF*

If successful, Plaintiff On Site Energy may recover any damages it sustained resulting from Defendant MTU Onsite Energy's infringement.

For plaintiff to recover its actual damages, plaintiff must prove by a preponderance of the evidence:

1. That its damages were caused by defendant's infringing use of her mark; and

2. That consumers were actually confused or deceived as a result of defendant's conduct.

*Source: Model Jury Instructions Copyright, Trademark and Trade Dress Litigation,* §§ 2.8.1-2.8.2 209-210 (Am. Bar Ass'n Publ'g 2008).

_____ GIVEN

_____ GIVEN AS MODIFIED

_____ DENIED

JURY INSTRUCTION NO._____

*DAMAGES - REASONABLE ROYALTY*

If you find that On Site Energy has proven infringement and that infringement caused it injury, you must determine the amount of plaintiff's actual damages. On Site Energy must prove the amount of its damages by a preponderance of the evidence. Damages means the amount of money that will reasonably and fairly compensate On Site Energy for any injury you find was caused by MTU Onsite Energy's infringement.

On Site Energy alleges that it is entitled to a reasonably royalty.

A reasonable royalty in this case is the amount of money that would be agreed to in a hypothetical arms length negotiation between the owner of a trademark or service mark and a third party for the right to use the mark, with both operating under the assumption that the negotiated mark is valid and would be infringed without a license. You can award Plaintiff a reasonable royalty only for past infringement you may find, and shall not award any damages for any possible future infringement.

In determining a reasonable royalty, you should place yourself at the point in time at which you believe the arms length negotiation that I just referred to would have been likely to have occurred. This is typically just before any liability for infringement first occurred.

You should also assume that both Plaintiff and Defendant knew all pertinent information at the time of the hypothetical negotiations.

Having that in mind, you may consider any relevant fact in determining the reasonable royalty for the infringing use of the trademark or service mark, including the opinion testimony of experts.

In calculating the reasonable royalty, you may consider the following factors: (1) royalty rates received in prior licenses by the licensor; (2) prior rates paid by the licensee; (3) the nature and scope of the license, such as exclusive or non-exclusive; (4) the licensor's licensing policies; (5) commercial relationship between the licensor and licensee; (6) special value of the mark to the infringer; (7) duration of the mark and term of the license; (8) profitability of the mark; (9) utility and advantages of the mark over prior marks; (10) benefits to those who have used the mark; (11) the extent to which the

infringer has used the mark; (12) reasonable royalties within the industry; (14) opinion testimony by experts; and (15) the amount that the licensor and licensee would have agreed upon in voluntary negotiations.


*Source: McCarthy on Trademarks* § 30:85 ("Usually, when the courts have awarded a royalty for past acts of infringement, it was for continued use of a mark after a license ended and damages were measured by the royalty rate the parties had agreed on.... The imposition of a compulsory license, permitting the infringer to continue by paying a court-determined royalty to the trademark owner is not a proper remedy."); *Sands, Taylor & Wood v. Quaker Oats Co.,* 34 F.3d 1340, 1350 (7th Cir. 1994) ("one measure of actual damages that, if ascertained with reasonable certainty, could be said to reflect the actual loss of [the trademark owner] the cost of a reasonable royalty"); *Buzz Off Insect Shield, LLC v. S. C. Johnson & Son, Inc.,* 606 F.Supp.2d 571, 584 (M.D.N.C. 2009) (courts have recognized that where damages are difficult to measure, "a plaintiff may alternatively recover damages ... [through an] approximation of the royalties" the defendant would have had to pay, "had it recognized the validity of [the plaintiffs] claims"); *The Apollo Theater Foundation, Inc. v. Western Intern. Syndication,* No. 02 Civ. 10037, 2005 WL 1041141 at *13-14 (S.D.N.Y. May 5, 2005) ("One seldom-used method for computing trademark damages is a royalty. A royalty is a measure of compensation *for past* infringement based on the reasonable value of a license to use the trademark that the infringing defendant should have paid"; stating that one should not confuse "the notion of a 'compulsory license' for future trademark usage with a reasonable royalty as a measure of damages for past trademark infringement") (emphasis added); *A & L Laboratories, Inc. v. Bou-Matic, LLC,* No. Civ.02-4862, 2004 WL 1745865 at *2 (D. Minn. Aug. 2, 2004) (listing factors to consider in calculating reasonable royalty, and citing trademark infringement cases, although the court found there was a license and no infringement).


_____   GIVEN


_____   GIVEN AS MODIFIED


_____   DENIED

JURY INSTRUCTION NO._____

*INTENTIONAL INFRINGEMENT*

If you find that MTU Onsite Energy infringed On Site Energy's mark, you must also determine whether defendant's infringement involved fraud, bad faith, or willful infringement.


*Source:* *Louis Vitton Malleteir S.A. v. LY USA, Inc.*, 676 F.3d 83, 111 (2nd Cir. 2012).


_____ GIVEN

_____ GIVEN AS MODIFIED

_____ DENIED