```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
ON SITE ENERGY CO.,

                    Plaintiff,

         -against-                              MEMORANDUM & ORDER
                                                10-CV-1671(JS)(WDW)
MTU ONSITE ENERGY CORP.,

                    Defendant.
----------------------------------------X
APPEARANCES
For Plaintiff:     Kurt N. Jones, Esq.
                   William A. McKenna, Esq.
                   Woodard Emhardt Moriarty McNett & Henry LLP
                   111 Monument Circle, Suite 3700
                   Indianapolis, IN 46204

                   Annalee Cataldo-Barile, Esq.
                   Jarrett M. Behar, Esq.
                   Sinnreich Kosakoff & Messina
                   267 Carleton Avenue, Suite 301
                   Central Islip, NY 11722

For Defendant:     Kathleen E. McCarthy, Esq.
                   Amy E. Jones, Esq.
                   Bruce W. Baber, Esq.
                   Erik J. Dykema, Esq.
                   Yuridia Caire, Esq.
                   King & Spalding LLP
                   1185 Avenue of the Americas
                   New York, NY 10036
```

SEYBERT, District Judge:

In this Lanham Act case, Plaintiff On Site Energy ("OSE") sued Defendant MTU Onsite Energy ("MTU") for trademark infringement. Pending before the Court is MTU's motion to exclude two of OSE's experts: Robert Schlegel and Henry Ostberg. (Docket Entry 44). MTU's motion is DENIED.

DISCUSSION

Federal Rule of Evidence 702 is the starting point for assessing whether experts may testify at trial. Rule 702 provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. Districts courts act as "gate-keepers" whereby they make an initial determination whether an expert's testimony is both relevant and reliable. See Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 264 (2d Cir. 2002). Expert evidence is relevant if it tends to make any fact of consequence to the litigation more or less probable. Id. at 265; see also FED. R. EVID. 401.

Expert evidence is considered reliable if the expert's theory is valid and if it has been properly applied to the facts of a particular case. See Daubert v. Merrell Dow Pharms., Inc.,

2

509 U.S. 579, 592-93, 13 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). In making a preliminary reliability assessment, courts are guided by the factors listed in Rule 702, and they may also consider a number of additional factors that the Supreme Court has identified in its precedents.  See Amorgianos, 303 F.3d at 265.  These factors include whether an expert's theory or technique (1) "can be (and has been) tested," Daubert, 509 U.S. at 593; (2) "has been subjected to peer review and publication," id.; (3) has an acceptable rate of error, see id. at 594; (4) is guided by accepted professional standards, see id.; and (5) is generally accepted within the relevant professional community, see id.  The Court's gate-keeping inquiry "is fluid and will necessarily vary from case to case."  Amorgianos, 303 F.3d at 266.

The proponent of an expert's testimony has the burden of satisfying the admissibility requirements by a preponderance of the evidence.  The decision whether to admit or exclude a proposed expert's testimony is committed to the Court's broad discretion.  E.g., Amorgianos, 303 F.3d at 264.  District courts should generally exclude expert testimony "if it is speculative or conjectural or based on assumptions that are 'so unrealistic and contradictory as to suggest bad faith' or to be in essence 'an apples and oranges comparison.'"  Zerega Ave. Realty Corp.

3

v. Hornbeck Offshore Transp., LLC, 571 F.3d 206, 214 (2d Cir. 2009) (quoting Boucher v. U.S. Suzuki Motor Corp., 73 F.3d 18, 21 (2d Cir. 1996)). "[O]ther contentions that the assumptions are unfounded go to the weight, not the admissibility, of the testimony." Id. (alteration in original).

I. Robert Schlegel

Robert Schlegel proposes to testify about (1) a hypothetical "reasonable royalty" for the trademark in issue, and (2) OSE's advertising expenditures in relation to the trademark. (Trial Ex. 164, Schlegel Report ("Schlegel Rpt.") 2.) MTU challenges both of these opinions.

MTU challenges Schlegel's reasonable royalty testimony on two grounds. First, it argues that a reasonable royalty calculation is irrelevant in cases, such as this one, where the parties have no history of trademark licensing. (Def. Br. 6-8.) Although reasonable royalties are a "seldom-used" measure of damages, The Apollo Theater Found., Inc. v. W. Int'l Syndication, No. 02-CV-10037, 2005 WL 1041141, at *13 (S.D.N.Y. May 5, 2005)--largely because they are difficult to quantify, see Gucci Am., Inc. v. Guess?, Inc., __ F. Supp. 2d __, 2012 WL 841620, at *2 (S.D.N.Y. Mar. 13, 2012)--there is no per se rule against reasonable royalties in cases with no evidence of licensing history, Coryn Group II, LLC v. O.C. Seacrets, Inc.,

4

No. 08-CV-2764, 2010 WL 1375301, at *8 (D. Md. Mar. 30, 2010); see also Sands, Taylor & Wood v. Quaker Oats Co., 34 F.3d 1340, 1351 (7th Cir. 1994). Second, MTU challenges the reliability of Schlegel's royalty analysis. (Def. Br. 8-10.) Any flaws in Schlegel's methods may be challenged during cross-examination. See Gucci Am., 2012 WL 841620, at *3 ("While Imburgia's opinions may be subject to attack via '[v]igorous cross-examination [and] presentation of contrary evidence,' I am not convinced, after reviewing his report, that his opinions are so flawed as to be [inadmissible]." (quoting Daubert, 509 U.S. at 596)); Coryn Group II, 2010 WL 1375301, at *8 (criticism of a reasonable royalty expert "may be adequately addressed through cross-examination and the presentation of contrary evidence"). This portion of MTU's motion is denied.

MTU challenges Schlegel's advertising testimony as irrelevant because Schlegel has not analyzed how effective OSE's advertising was in promoting the trademark. (See Def. Br. 10.) Schlegel compares advertising outlays as a percentage of net revenue for a handful of generator sales companies and concluded that OSE's advertising efforts were "an indicator of investment by management to expand OSE operations and customer brand recognition." (Schlegel Rpt. 3.) He also opines that OSE "devoted a reasonable proportion of revenues to advertising and

5

promotion expense in order to expand its 'Brand' and attract customers." (Id. at 2.) Advertising expenditures are a factor in the secondary meaning analysis, Thompson Med. Co., Inc. v. Pfizer Inc., 753 F.2d 208, 217 (2d Cir. 1985), and MTU's criticisms of Schlegel's analysis go to the weight of Schlegel's opinion, not its admissibility, see Zerega, 571 F.3d at 214. This portion of MTU's motion is denied also.

II. Henry Ostberg

Henry Ostberg conducted a confusion survey and concluded that there was a "net likelihood of 'reverse' confusion of at least 21% between [OSE] and [MTU], after adjusting for a control." (Trial Ex. 178, Ostberg Report ("Ostberg Rpt.") 3.) MTU seeks to exclude evidence concerning the survey, arguing that its methodology was inherently flawed. (Def. Br. 16-22.) Specifically, MTU maintains that the universe of survey participants was too broad (id. at 16), the survey control was useless (id. at 18-19), the array format did not replicate market conditions (id. at 19), and the survey results included too much "noise" (id. 21). This portion of MTU's motion is denied.

Errors in survey methodology generally go to the survey's weight, not its admissibility. Schering Corp. v. Pfizer Inc., 189 F.3d 218, 228 (2d Cir. 1999), as amended on

6

reh'g (Sept. 29, 1999). "[T]here is 'no such thing as a perfect survey. The nature of the beast is that it is a sample, albeit a scientifically constructed one.'" THOIP v. The Walt Disney Co., 690 F. Supp. 2d 218, 230 (S.D.N.Y. 2010) (quoting MCCARTHY ON TRADEMARKS § 32:184). District courts may exclude survey evidence if it is patently unreliable or unhelpful, see id. at 231, but cross-examination is often the appropriate way to raise criticisms of the survey's methods, see, e.g., POM Wonderful LLC v. Organic Juice USA, Inc., 769 F. Supp. 2d 188, 201 (S.D.N.Y. 2011).

As to the argument concerning the survey's control, Ostberg used two boiler companies--Mobile Steam Boiler Rental Corporation and Cleaver-Brooks Boiler Company--and asked respondents whether they thought that the companies were associated with one another. (Ostberg Rpt. 10.) Unlike OSE and MTU, the control companies did not have similar names. In OSE's view, "[t]he extent to which there was a greater likelihood of confusion in the answers given concerning [OSE and MTU], as compared to the answers given concerning Mobile Steam/Cleaver-Brooks, can therefore be attributed to the similarity in the On Site Energy/MTU Onsite Energy names." (Trial Ex. 185 at 2.) MTU argues that the controls should have been more similar to the test stimulus. (Def. Br. 18.) Although survey controls

7

should, as a general matter, be similar to the marks at issue, see THOIP, 690 F. Supp. 2d at 240-41, the Court cannot say that Ostberg's choice of control renders his survey unreliable as a matter of law. MTU may address the control's efficacy on cross-examination.

As to the degree to which the survey replicated market conditions, MTU points to THOIP, a case in which the court concluded that a sequential survey was inadmissible because the trademarks at issue were not found in close proximity to one another. THOIP, 690 F. Supp. 2d at 236-37. Here, however, there is some evidence that the allegedly conflicting marks are seen in close proximity, including, for example, on a Google search results page (Trial Ex. 4) and in hard copy advertising books (see French Decl. ¶¶ 9-10). As with its other criticisms of the survey, MTU is free to challenge the survey methodology at trial.

The remaining challenges to the Ostberg survey--that its respondent universe was too broad and that the high noise level indicates its unreliability--also go to its weight, not admissibility. See THOIP, 690 F. Supp. 2d at 241-42; MCCARTHY ON TRADEMARKS § 32:162 ("The selection of an inappropriate universe generally affects the weight of the resulting survey data, not its admissibility.").

## CONCLUSION

For the foregoing reasons, MTU's motion to exclude OSE's experts (Docket Entry 44) is DENIED in its entirety.

SO ORDERED.

/s/ JOANNA SEYBERT_____
Joanna Seybert, U.S.D.J.

Dated:   July 19, 2012
         Central Islip, New York