```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
ON SITE ENERGY COMPANY, INC.,

                        Plaintiff,        MEMORANDUM & ORDER
                                          10-CV-1671(JS)(WDW)
          -against-

MTU ONSITE ENERGY CORP.,

                        Defendant.
----------------------------------------X
APPEARANCES
For Plaintiff:      Kurt N. Jones, Esq.
                    William A. McKenna, Esq.
                    Woodard Emhardt Moriarity McNett & Henry LLP
                    111 Monument Circle, Suite 3700
                    Indianapolis, IN 46204

                    Annalee Cataldo-Barile, Esq.
                    Jarrett M. Behar, Esq.
                    Sinnreich Kosakoff & Messina
                    267 Carleton Avenue, Suite 301
                    Central Islip, NY 11722

For Defendant:      Kathleen E. McCarthy, Esq.
                    Erik J. Dykema, Esq.
                    King & Spalding LLP
                    1185 Avenue of the Americas
                    New York, NY 10036

                    Amy E. Jones, Esq.
                    Bruce W. Baber, Esq.
                    King & Spalding LLP
                    1180 Peachtree Street
                    Atlanta, GA 30309

                    Yuridia Caire, Esq.
                    King & Spalding LLP
                    333 Twin Dolphin Drive, Suite 400
                    Redwood City, CA 94065
```

SEYBERT, District Judge:

Currently pending before the Court are Defendant MTU Onsite Energy Corp.'s ("Defendant") motion for attorneys' fees (Docket Entry 102) and Plaintiff On Site Energy Company, Inc.'s ("Plaintiff") motion for judgment as a matter of law/new trial/set aside judgment (Docket Entry 104).  For the following reasons, Defendant's motion is GRANTED IN PART and Plaintiff's motion is DENIED.

BACKGROUND

The Court presumes familiarity with the underlying facts of this case.  Briefly, Plaintiff commenced this action on April 14, 2010 against Defendant for trademark infringement.  Plaintiff is a corporation that provides retail and rental services of power generation and temperature control equipment.  In 2008, Defendant "adopted a new name for its group of global companies operating in the field of generating energy onsite - MTU ONSITE ENERGY." (Def.'s Br. for Atty. Fees, Docket Entry 102-1, at 4.)

According to Plaintiff, Defendant's use of the ON SITE ENERGY mark infringes upon its trademark.  The Defendant, on the other hand, claims that it is not infringing on Plaintiff's trademark, that Plaintiff's trademark is a generic term in common use and therefore is not subject to trademark protection, and that Plaintiff's federal trademark registration is invalid.

2

A jury trial in this case commenced on July 30, 2012. After several days of trial, the jury made the following determinations: (1) Plaintiff had not proven by a preponderance of the evidence that Defendant infringed on a federally-registered service mark; (2) Plaintiff had not proven by a preponderance of the evidence that Defendant infringed an unregistered service mark; (3) Defendant had proven by a preponderance of the evidence that the mark was generic on its first counterclaim for cancellation of Plaintiff's federal registration; (4) Defendant had proven by clear and convincing evidence that the registration was obtained by fraud on its first counterclaim for cancellation of Plaintiff's federal registration; (5) Defendant had not proven by clear and convincing evidence that the mark is descriptive without secondary meaning on its first counterclaim for cancellation of Plaintiff's federal registration; and (6) Defendant had proven its second counterclaim by a preponderance of the evidence that ON SITE ENERGY is generic. (Jury Verdict Sheet, Docket Entry 99, Court Ex. 6.)

<u>DISCUSSION</u>

Following the jury verdict in its favor, Defendant now moves for attorneys' fees. Plaintiff, however, has moved for judgment as a matter of law, a new trial, and/or to set aside

the verdict.  The Court will first address Plaintiff's motion before turning to that of Defendant.

I.  <u>Plaintiff's Motion</u>

Plaintiff moves for judgment as a matter of law on the issue of fraud in the procurement as well as for a new trial and to vacate the judgment based upon several particular theories. The Court will address each of Plaintiff's arguments in turn.

A.  <u>Judgment as a Matter of Law</u>

As part of its counterclaims, Defendant sought to cancel Plaintiff's U.S. Trademark Registration No. 3,759,962 regarding the ON SITE ENERGY mark on the ground that the registration was procured by fraud.  In support of this claim, Defendant submitted various correspondences between Defendant and Plaintiff prior to Plaintiff's relevant submissions to the Patent and Trademark Office and Plaintiff's procurement of the trademark.  Specifically, throughout litigation and trial, Defendant relied heavily on the April 17, 2009 letter from its counsel, Mr. Vito Giordano, to Plaintiff's counsel Mr. James Durlacher.  (Apr. 17, 2009 Ltr., Trial Ex. D, Docket Entries 104-4 through 104-6.)  In that letter, Mr. Giordano stated that he believed that the ON SITE ENERGY mark was generic and provided his reasons therefore.  He further maintained that "'On-Site Energy' . . . has been . . . pervasively used publicly to refer to energy provided on site," and provided a list of

seven specific examples. (Apr. 17, 2009 Ltr. at 3.) Mr. Giordano attached 179 pages to his letter in support of his assertions. Thereafter, however, Plaintiff's counsel Mr. Durlacher submitted a sworn statement (the "Verified Statement") to the Patent and Trademark Office affirming that the ON SITE ENERGY mark had become distinctive through Plaintiff's substantially exclusive and continuous use in commerce for at least the last five years. (Verified Stmt., Trial Ex. 2J, Docket Entry 104-2.)

On August 5, 2012, after the close of evidence, Plaintiff moved for judgment as a matter of law on this claim arguing a lack of proof of fraud in the procurement of the trademark registration. (Pl.'s First JMOL Mot., Docket Entry 91.) The Court denied this motion on the record during an August 6, 2012 conference. (See 8/6/12 Min. Order, Docket Entry 97.) Plaintiff now renews its motion essentially asserting the same arguments.

      1.  <u>Legal Standard</u>

Judgment as a matter of law is proper only when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." FED. R. CIV. P. 50(a)(1). "In reviewing a Rule 50 motion, a court may consider all the record evidence, but in

doing so it 'must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence.'" Cross v. N.Y.C. Trans. Auth., 417 F.3d 241, 247 (2d Cir. 2005) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)).  A court should set aside a jury verdict

> only where there is such a complete absence
> of evidence supporting the verdict that the
> jury's findings could only have been the
> result of sheer surmise and conjecture, or .
> . . such an overwhelming amount of evidence
> in favor of the movant that reasonable and
> fair minded men could not arrive at a
> verdict against him.

Kosmynka v. Polaris Indus., Inc., 462 F.3d 74, 79 (2d Cir. 2006) (ellipsis in original) (internal quotation marks and citation omitted).

> 2. Discussion

As this Court previously held, "the question of alleged fraud on the PTO in obtaining a trademark registration presents a factual question for the jury." (7/26/12 MIL Order, Docket Entry 82, at 2 (quoting MCCARTHY ON TRADEMARKS § 31:61).) Here, there was sufficient evidence for the jury to conclude that the trademark was procured by fraud.

The Court properly instructed the jury as follows:

> Defendant claims that Plaintiff
> obtained its service mark registration
> through fraud on the Patent and Trademark
> Office.

> To succeed on this claim, defendant must prove by clear and convincing evidence that plaintiff knowingly made material misrepresentations to the Patent and Trademark Office with the intent to deceive the Patent and Trademark Office . . . .
>
> You have heard the attorneys discuss the statement from plaintiff to the Trademark--to the Patent and Trademark Office that plaintiff used with the [sic] ON SITE ENERGY mark was substantially exclusive and continuous.
>
> Under the law, this is not necessarily a misrepresentation if even if [sic] other companies or people may have been using the On Site Energy mark at the time this statement was made. Plaintiff's use of the mark would still be substantially exclusive if the other uses of the mark were either inconsequential or infringing.

(Tr. 974-76.)

Plaintiff asserts that it is entitled to judgment as a matter of law because there was insufficient proof that the Verified Statement was false. According to Plaintiff, at the time Mr. Durlacher submitted the Verified Statement in November 2009, the only other company he knew of using a variation of ON SITE ENERGY was the "On Site Energy" company in Carlsbad, California (the "California Company"). (Pl.'s Br. for Post-Trial Relief at 3-4.) Thus, Plaintiff argues that "Defendant failed to demonstrate as a matter of law, by clear and convincing evidence, that Mr. Durlacher 'believed that a likelihood of confusion would result' with the California

Company from Plaintiff's use of 'On Site Energy' for the recited services."  (Pl.'s Br. for Post-Trial Relief at 5.)

Plaintiff's argument, however, presents the issue much too narrowly.  First, the Court properly instructed the jury that Plaintiff's use of the mark would still be substantially exclusive if other uses of the mark were either inconsequential or infringing.  It was within the jury's ken to consider only the California Company or to consider additional third party companies in determining whether the Verified Statement was fraudulent.  See Fair Issac Corp. v. Experian Info. Sol., Inc., 650 F.3d 1139, 1149 (8th Cir. 2011) ("The jury heard FICO's argument that it only used 300-850 as a trademark to identify source, and a reasonable jury could have rejected FICO's contention and determined that the statement was false.").

Moreover, even in just considering the California Company, its services, and confusion, such evidence is not so heavily in favor of Plaintiff as to merit judgment as a matter of law.  Plaintiff submitted evidence that the California Company is engaged in consulting services rather than retail sales and rental services.  Ultimately, it was in the jury's province to weigh that evidence.  See L.D. Kichler Co. v. Davoil, Inc., 192 F.3d 1349, 1352 (Fed. Cir. 1999) (genuine issue of fact as to whether other companies' use of mark was inconsequential or infringing).

8

Second, Defendant submitted extensive evidence that the Verified Statement was indeed false, including the April 17, 2009 letter to Mr. Durlacher and the 179 attached pages. Furthermore, Mr. Giordano testified that he came to the conclusion that the ON SITE ENERGY mark was not exclusive to Plaintiff based upon substantial research. (Tr. 680-81.)

Accordingly, Plaintiff's motion for judgment as a matter of law regarding fraud in the procurement is DENIED.

B. New Trial

1. Legal Standard

"A motion for a new trial, pursuant to [Federal Rule of Civil Procedure] 59, may be granted when the district court is 'convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice.'" Tesser v. Bd. of Educ. of City Sch. Dist. of City of N.Y., 190 F. Supp. 2d 430, 440 (E.D.N.Y. 2002) (quoting Smith v. Lightning Bolt Prods., Inc., 861 F.2d 363, 370 (2d Cir. 1988)). In making this determination, the Court "is free to weigh the evidence [itself] and need not view it in the light most favorable to the verdict winner." Health Alliance Network, Inc. v. Cont'l Cas. Co., 245 F.R.D. 121, 127 (S.D.N.Y. 2007) (alteration in original) (quoting Song v. Ives Labs., Inc., 957 F.2d 1041, 1047 (2d Cir. 1992)). In addition, the Court may grant a new trial "even if there is substantial evidence to support the verdict."

Datskow v. Teledyne Cont'l Motors Aircraft Prods., a Div. of Teledyne Indus., Inc., 826 F. Supp. 677, 683 (W.D.N.Y. 1993) (internal quotation marks and citation omitted). Despite this liberality, however, "[a] court should only grant a new trial when a jury's verdict is egregious." Health Alliance Network, Inc., 245 F.R.D. at 127. Furthermore, "Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple[.]'" O'Connell v. Onondaga Cnty., No. 09-CV-0364, 2013 WL 998598, at *1 (N.D.N.Y. Mar. 13, 2013) (alteration in original) (quoting Sequa Corp. v. GBJ Corp., 156 F.3d 136, 144 (2d Cir. 1998)).

  2. "Crime" Accusations

    Plaintiff argues that it is entitled to a new trial because defense counsel repeatedly emphasized and stated that Mr. Durlacher had committed a crime in connection with his Verified Statement to the Patent and Trademark Office. Specifically, Plaintiff points to the following portion of defense counsel's closing argument: "If you are willfully blind to that evidence, and in this particular case we have testimony that there was a deliberate and conscious decision not to review that, then, ladies and gentlemen, that is a crime on the Trademark Office." (Tr. 933-34.) The Court disagrees.

"[W]hile not all misconduct of counsel taints a verdict to such a degree as to warrant a new trial, 'when the conduct of counsel in argument causes prejudice to the opposing party and unfairly influences a jury's verdict, a new trial should be granted.'" Hopson v. Riverbay Corp., 190 F.R.D. 114, 122 (S.D.N.Y. 1999) (quoting Pappas v. Middle Earth Condominium Ass'n, 963 F.2d 534, 540 (2d Cir. 1992)). In making this determination, "the Court must consider the 'totality of the circumstances' including 'the nature of the comments, their frequency, their possible relevance to the real issue before the jury, [and] the manner in which the parties and the court treated the comments.'" Id. at 122. (quoting Hynes v. LaBoy, 887 F. Supp. 618, 631 (S.D.N.Y. 1995)).

Here, Plaintiff points to one instance in defense counsel's summations in which she referred to Mr. Durlacher having committed a crime in submitting the Verified Statement. Interestingly, however, the Verified Statement contains an explicit acknowledgement that "willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code . . . ." (Verified Stmt. at 1-2.) Moreover, that Mr. Durlacher had committed fraud was one of Defendant's theories in the case and central to their fraud in the procurement counterclaim. Thus, in the context of this case and the claims presented,

11

counsel's examination of Mr. Durlacher or a comment during
summations does not merit a new trial.  See Marcic v. Reinauer
Transp. Cos., 397 F.3d 120, 126-27 (2d Cir. 2005) (defense
counsel's statements that plaintiff's medical expert's testimony
was "silly" and it was "sad" that plaintiff would waste the
court's time "were not so inflammatory or so unsupported by the
record" as to entitle plaintiff to a new trial); Frometa v.
Diaz-Diaz, No. 07-CV-6372, 2008 WL 5210345, at *8 (S.D.N.Y. Dec.
11, 2008) ("[W]hile the defense counsel intimated that the
plaintiff's attorney worked as a 'team' with Frometa's doctors
and withheld information about Frometa's medical history and
other car accidents from her doctors, such insinuations were not
without some support in the record."); Beyar v. City of N.Y.,
No. 04-CV-3765, 2007 WL 1959010, at *4 (E.D.N.Y. June 29, 2007)
(argument based upon inferences that could be made from the
evidence were permissible).

Therefore, this is not the kind of case where the jury
was prejudiced by repeated discussion of an irrelevant and
inflammatory topic and Plaintiff's motion on this basis is
DENIED.

### 3.  Jury Instruction on Willful Blindness

Plaintiff further argues that the Court erroneously
instructed the jury on fraud by providing the jury with a

willful blindness instruction.   The instruction at issue is as follows:

> To succeed [on the counterclaim of fraud], defendant must prove by clear and convincing evidence that plaintiff knowingly made material misrepresentations to the Patent and Trademark Office with the intent to deceive the Patent and Trademark Office. . . .
>
> You may find that plaintiff acted knowingly if a representative of plaintiff actually knew that his or her statement was false, or if that representative acted with willful blindness to the truth or falsity of the statement.
>
> A person acts with willful blindness when he or she subjectively believed that there was a high probability that a particular fact exists and took deliberate actions to avoid learning of that fact.
>
> I caution you that it is not enough to find willful blindness if the person was simply negligent--in other words, if he or she should have known of the relevant facts. It is also not enough to find willful blindness if the person acted recklessly, in other words, if he or she believed that there was a substantial probability that a particular fact exists.
>
> Willful blindness means both that a person believed there was a high probability that a fact exists and then took active steps to avoid learning of that fact.

(Tr. 974-75.)

The Court determined that such a charge was appropriate only after a conference on the matter and after the parties' submissions on the specific issue of willful blindness. (Tr. 875 (THE COURT: "I have asked both plaintiff and defendant to submit their positions on the issue of willful blindness as

13

laid out in Global-Tech, with regard to the term, willful blindness, should be included."); Pl.'s Proposed Fraud Chrg., Docket Entry 89; Def.'s Proposed Fraud Chrg., Docket Entry 90.) At the time, the Court found the Supreme Court case of Global-Tech Applicances, Inc. v. SEB S.A., --- U.S. ----, 131 S. Ct. 2060, 179 L. Ed. 2d 1167 (2011), to be particularly instructive. There, the Court began with the premise that induced infringement under 35 U.S.C. § 271(b) "requires knowledge that the induced acts constitute patent infringement." Id. at 2068. The Supreme Court's analysis continued with a discussion of the doctrine of willful blindness generally, ultimately concluding that "[g]iven the long history of willful blindness and its wide acceptance in the Federal Judiciary, we can see no reason why the doctrine should not apply in civil lawsuits for induced patent infringement under 35 U.S.C. § 271(b)." Id. at 2069.

Then, as now, the Court finds Global-Tech to be analogous and that a willful blindness instruction in this case was not erroneous. The Court makes this determination despite Plaintiff's supplemental authority on the issue. Specifically, Plaintiff has directed the Court to the Eleventh Circuit case of Sovereign Military Hospitaller Order of Saint John of Jerusalem of Rhodes and of Malta v. The Florida Priority of the Knights of Hospitallers of the Sovereign Order of Saint John of Jerusalem, Knights of Malta, the Ecumenical Order, 694 F.3d 1200 (11th Cir.

14

Sept. 11, 2012). Since Plaintiff's submission, the <u>Sovereign Military</u> decision was vacated and superseded on reconsideration. <u>See Sovereign Military</u>, 702 F.3d 1279 (11th Cir. Dec. 18, 2012). In both cases, though, the Court found that the willful blindness doctrine was not applicable in examining a fraud claim based on misrepresentations in the declaration oath to the Patent and Trademark Office. <u>See</u> <u>id.</u> at 1290-91. The declaration oath, however, is different from a Section 2(f) "substantially exclusive" use statement. An examination of the declaration oath focuses on the declarant's subjective belief, <u>see</u> <u>id.</u> at 1290, while Mr. Durlacher's Verified Statement (pursuant to Section 2(f)) depends upon his knowledge.

<u>Global-Tech</u> similarly focused on knowledge. "The principle that willful blindness is tantamount to knowledge is hardly novel," <u>Tiffany (NJ) Inc. v. eBay Inc.</u>, 600 F.3d 93, 110 n.16 (2d Cir. 2010), nor would this be the first time a court in this circuit applied the doctrine in the trademark context, <u>see</u> <u>Fendi Adele S.R.L. v. Filene's Basement, Inc.</u>, 696 F. Supp. 2d 368, 393 (S.D.N.Y. 2010) (applying willful blindness in determining whether defendant acted with willful deception in plaintiff's accounting claim); <u>Johnson & Johnson Consumer Cos., Inc. v. Aini</u>, 540 F. Supp. 2d 374, 396 (E.D.N.Y. 2008) (applying willful blindness in determining whether there was willful

infringement).   Accordingly, Plaintiff's motion for a new trial in this regard is DENIED.

### 4.  The Genericness Verdict

In further support of its motion for a new trial, Plaintiff maintains that the jury's verdict determining that the mark at issue is generic is against the weight of the evidence. The Court disagrees.

As the Court properly instructed the jury, "[a] term is generic if it does not identify the source of a product or service, but rather uses the common word or words that an average consumer would use to describe the product or services." (Tr. 963.)  Plaintiff argues that Defendant's evidence lacked proof that the term "on site energy" was used as a generic term for the particular services recited in Plaintiff's service mark registration, namely retail sales and rental services of power generation and temperature control equipment.

However, Defendant's evidence sufficiently established at trial that "on site energy" and "onsite energy" are generic terms for the general types of goods and services Plaintiff provided.  See Otokoyama Co. Ltd. v. Wine of Japan Import, Inc., 7 F. App'x 112, 115 (2d Cir. 2001) ("Testimonial and documentary evidence, as well as actual sake products, supported W.J.I.'s claim that the term 'otokoyama' has been used by as many as sixteen different sake breweries in Japan.").  For example, the

16

179 pages of research that accompanied Mr. Giordano's April 17, 2009 letter, along with his testimony and the testimony of Mr. Patrick French, Plaintiff's general manager and vice president, demonstrate that the mark has been used in a variety of contexts and is such that the average consumer would use it to describe the relevant product or services. (See Testimony of P. French, Tr. 359 ("Q: Do you know other people in what I would call generally the energy business that use the name On Site Energy other than MTU and your company?  A: That is a broad thing. But, yeah, GO Thermal Company, that claims to make electricity with hot water from the earth that has a variation of the name On Site Energy."); Testimony of V. Giordano, Tr. 671 ("Another category were trademark applications and patent applications, with the companies who tried to get a trademark or patent.  And when they referred to the service that they were dealing with, or the product that they were dealing with, and called that service or that product, on-site energy.").)

Furthermore, "[a] generic term refers to the genus of which a particular product is a species." GMT Prods., L.P. v. Cablevision of N.Y.C., Inc., 816 F. Supp. 207, 210 (S.D.N.Y. 1993); accord Jewish Sephardic Yellow Pages, Ltd. v. DAG Media, Inc., 478 F. Supp. 2d 340, 356 (E.D.N.Y. 2007) ("A generic term consists of words that simply identify a class or genus of goods to which a particular product belongs."). Similarly, a generic

term for particular goods is also generic for the sale of those goods. See In re Lubys Fuddruckers Restaurants, LLC, 2011 WL 7005531, at *3 (T.T.A.B. Dec. 22, 2011) ("[A] term that identifies a food item prepared and sold in restaurants may be descriptive of restaurant services."). Thus, Defendant's theory was--and the jury found that--"on site energy" or "onsite energy" "describes a general category of services," encompassing those services that Plaintiff provides. GMT Prods., L.P., 816 F. Supp. at 210-11 (finding that "The Arabic Channel" was generic for the general category of services of channels that broadcast in the Arabic language).

Accordingly, Plaintiff's motion for a new trial because the genericness verdict is against the weight of the evidence is DENIED.

5.  Infringement

Plaintiff also maintains that it is entitled to a new trial on its infringement claims for two reasons. First, Plaintiff argues that "[t]he jury's non-infringement finding was likely based upon its fraud and genericness findings." (Pl.'s Br. for Post-Trial Relief at 19.) Second, Plaintiff maintains that it was prejudiced by the exclusion of actual confusion evidence.

With respect to Plaintiff's first argument, there is no dispute that the Court properly instructed the jury that, in

18

determining Plaintiff's infringement claims, the first consideration is whether Plaintiff is the owner of a valid mark. (See Pl.'s Proposed Jury Instructions, Docket Entry 55, at 18.) Thus, there is nothing necessarily improper about the jury determining that the mark was not valid, and therefore not considering the second, confusion, element of infringement. Furthermore, Plaintiff offers only speculation as to how the jury came to its verdict on the infringement claims. There is nothing to suggest that the jury misunderstood the jury instructions or improperly considered issues. See Aristrocrat Leisure Ltd. v. Deutsche Bank Trust Co. Ams., 727 F. Supp. 2d 256, 275 (S.D.N.Y. 2010) ("There was no indication that the jurors either failed to comprehend the special instruction or were swayed by the stricken testimony."). Accordingly, Plaintiff's motion for a new trial in this regard is DENIED.

With respect to Plaintiff's second argument, the parties briefed this issue and the Court previously issued a well-reasoned decision. Plaintiff maintains that the Court erroneously prevented it from presenting testimony from witnesses who had called Plaintiff, believing it to be associated with Defendant's product. According to Plaintiff, such testimony is relevant to the issue of reverse confusion.

As the Court explained in its July 26, 2012 Memorandum and Order, "[r]everse confusion exists when a subsequent user

19

selects a trademark that is likely to cause consumers to believe, erroneously, that the goods marketed by the prior user are produced by the subsequent user." (7/26/12 MIL Order at 3 (quoting Lang v. Retirement Living Publ'g Co., 949 F.2d 576, 583 (2d Cir. 1991).) In so holding, the Court relied, in part, on the Lang case, in which "the Second Circuit explained that mistaken calls to the senior user (a publishing company that had produced only one book) from people looking for the junior user (a magazine for retirees) were irrelevant to reverse confusion." (7/26/12 MIL Order at 3 (citing Lang, 949 F.2d at 583).) According to Plaintiff, the Court misapplied Lang because Plaintiff's witnesses were "going to recount facts that they were prospective purchasers of Plaintiff's products, and because of the confusing marks, errantly believed Plaintiff's products were produced by the Defendant or errantly believed that Plaintiff was affiliated with the Defendant." (Pl.'s Br. for Post-Trial Relief at 21.)

    As a preliminary matter, Plaintiff made this argument in opposition to Defendant's motion in limine. (See Docket Entry 67 at 5.) The Court considered Plaintiff's submission and rendered a written decision on the matter. (See generally 7/26/12 MIL Order.) Plaintiff's attempt to rehash the same arguments, in the same manner, is unavailing.

Furthermore, Plaintiff's own description of its proffered witness testimony belies its very argument. According to Plaintiff, it should have been able to submit evidence from its witnesses because, in accordance with <u>Lang</u>, they were prospective purchasers of Plaintiff's products, but errantly believed that Plaintiff's products were produced by Defendant or that Plaintiff and Defendant were affiliated. However, this is not the type of testimony that Plaintiff proffered. As Plaintiff's description of the testimony illustrates, the witnesses Plaintiff intended to offer were Defendant's customers--they were seeking "a quote on an MTU ONSITE ENERGY brand" generator or "information about an MTU ONSITE ENERGY brand of generator set" or "a quote to service six brand new MTU ONSITE ENERGY brand of generator sets." (Pl.'s Br. for Post-Trial Relief at 20.)

Moreover, the Court's Order made clear that the excluded evidence was witness testimony from persons seeking Defendant's product. (<u>See</u> 7/26/12 MIL Order at 4 ("[T]he witnesses MTU seeks to exclude contacted OSE thinking that OSE supplied MTU's generator sets.").) The Court did not prevent Plaintiff from presenting relevant evidence regarding reverse confusion, such as its survey evidence.

Accordingly, Plaintiff's motion in this respect is DENIED.

C.   <u>Vacatur</u>

Finally, Plaintiff argues that the judgment should be vacated pursuant to Federal Rule of Civil Procedure 60. That rule provides, in relevant part, that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1).

According to Plaintiff, the Court erred in entering judgment that the registration was procured by fraud. However, for the reasons stated above, the Court disagrees and finds that there was no error or mistake in entering judgment in accordance with the jury's verdict in this respect. Accordingly, Plaintiff's motion in this respect is DENIED.

Plaintiff further argues that the Court erred in entering the following judgment: "The terms 'on site energy' and 'onsite energy' are hereby declared to be generic terms for goods and services relating to the providing of electric or other power at a location at which such power is required." (Final Judgment, Docket Entry 101, ¶ 3.) Plaintiff maintains that this description of goods and services is too broad, and does not encompass the narrower services outlined in Plaintiff's registration. (Pl.'s Br. for Post-Trial Relief at 22.) Again, the Court disagrees.

The Court has already rejected Plaintiff's argument that it is entitled to a new trial because the jury verdict on genericness was essentially too broad and was not specific to the services Plaintiff provides. Plaintiff now attempts to reshape the same argument as one pursuant to Rule 60(b). However, for the reasons stated above, there was no mistake in the Court's entry of the genericness verdict. Accordingly, Plaintiff's motion in this respect is DENIED.

II.  Defendant's Motion for Attorneys' Fees

Having concluded that Plaintiff is not entitled to the post-trial relief requested, the Court next turns to Defendant's motion for attorneys' fees and costs (Docket Entry 102). Defendant seeks attorneys' fees pursuant to two provisions: (1) Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a); and (2) 28 U.S.C. § 1927.  In this instance, the Court finds Section 35(a) of the Lanham Act to be particularly instructive.

Section 35(a) provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a).  Courts have interpreted "exceptional cases" to mean those involving instances of fraud or bad faith, willful infringement, or a party's misconduct during litigation.  See Patsy's Brand, Inc. v. I.O.B. Realty, Inc., 317 F.3d 209, 221 (2d Cir. 2003); De La

Torre Bueno v. Dance Perspectives Found., Inc., No. 02-CV-8542, 2004 WL 1724950, at *2 (S.D.N.Y. July 30, 2004).

Here, the jury definitively held that Plaintiff had obtained registration of the ON SITE ENERGY mark by fraud, as shown by clear and convincing evidence. (Jury Verdict Sheet, Ct. Ex. 6.)  This, alone, merits a finding that this is an exceptional case entitling Defendant to attorneys' fees.  See Firehouse Rest. Grp., Inc. v. Scurmont LLC, No. 09-CV-0618, 2011 WL 4943889, at *11 (D.S.C. Oct. 17, 2011) ("In fact, the jury's verdict, finding that FRG committed fraud on the USPTO, renders this case 'exceptional.'"); De La Torre Bueno, 2004 WL 1724950, at *2 (jury's finding of willful violation of plaintiff's rights independently satisfied the exceptional case requirement). Furthermore, and as discussed previously, this verdict was supported by the evidence at trial.  See De La Torre Bueno, 2004 WL 1724950, at *2 (finding fraud and bad faith where corporate president's assertion that he did not receive a particular letter was contradicted by a multitude of other evidence). Accordingly, Defendant is entitled to attorneys' fees.

In support of its motion, however, Defendant submitted only a memorandum of law; the Declaration of Kathleen E. McCarthy; and a list of the time-keepers, their position, their year of graduation from law school, their hourly rate, the hours billed, and the total amount of fees requested.  (See Docket

Entry 102.)   Although Defendant apparently provided Plaintiff with its contemporaneous time records (see Docket Entry 112), it did not submit such records to the Court.   See Gen. Star Indemnity Co. v. Custom Editions Upholstery Corp., 940 F. Supp. 645, 652 (S.D.N.Y. 1996) ("The rule in this Circuit is that attorneys may not be awarded fees without presenting contemporaneous records.").   The Court notes that a transcription of hours and tasks based upon contemporaneous time records is sometimes sufficient.   See Moore v. Diversified Collection Servs., Inc., No. 07-CV-0397, 2013 WL 1622949, at *4 (E.D.N.Y. Mar. 19, 2013) ("Attorneys seeking fees may submit a typed listing of hours from computer records, where they made contemporaneous entries as the work was completed, and their billing was based on these contemporaneous records."), adopted by 2013 WL 1622713 (E.D.N.Y. Apr. 15, 2013); Nimkoff Rosenfeld & Schecter, LLP v. RKO Props., Ltd., No. 07-CV-7983, 2011 WL 8955840, at *4 (S.D.N.Y. Apr. 7, 2011) ("Transcriptions of contemporaneous time records containing [for each attorney, the date, the hours expended, and the nature of the work done] have been found to satisfy this requirement."), adopted by 2012 WL 3871394 (S.D.N.Y. Sept. 6, 2012).   Furthermore, the Court could, theoretically, reduce Defendant's fees.   See Moore, 2013 WL 1622949, at *4-5 (reducing fees by ten percent where submission lacked detail); Handschu v. Special Servs. Div., 727 F. Supp. 2d

239, 251 (S.D.N.Y. 2010) (reducing fees by ten percent for failure to support them with contemporaneous time records).

In the context of this case, though, the absence of contemporaneous time records and the cursory arguments that both parties have presented on this issue prevent the Court from determining a reasonable amount of fees. See RCB Equities No. 3, LLC v. Skyline Woods Realty, LLC, No. 10-CV-1182, 2013 WL 2468845, at *1 (N.D.N.Y. June 7, 2013) (court had insufficient information to award a reasonable amount for attorneys' fees and costs because declaration in support did not include "information regarding counsel's background and experience and the customary fees and/or hourly rate charged for similar legal services"); Alejo v. Darna Restaurant, No. 09-CV-5436, 2010 WL 5249383, at *6 (S.D.N.Y. Dec. 17, 2010) (noting that the court gave plaintiff another chance to submit records and that, upon second motion, spreadsheet listing categories was insufficient), adopted as modified by 2011 WL 165413 (S.D.N.Y. Jan. 18, 2011); Tran v. Tran, 166 F. Supp. 2d 793, 801 (S.D.N.Y. 2001) ("[R]ecords should specify, for each attorney, the date, the hours expended, and the nature of the work done." (internal quotation marks and citation omitted)).

Additionally, Defendant requests fees as high as $865 per hour. (See generally Docket Entry 102.) However, Defendant has provided no case law to support imposition of such fees nor

26

has it explained the level of experience of each of the time-keepers in the particular field of trademark infringement, the schools from which the time-keepers graduated, or any other insight into why fees at the requested rates are justified. Defendant also has not supported its argument for imposition of fees for time-keepers other than attorneys and paralegals.

Accordingly, and while the Court finds that this is an "exceptional case" that would entitle Defendant to fees, the Court cannot make any determination as to the amount of fees at this juncture.

[BOTTOM OF PAGE INTENTIONALLY LEFT BLANK]

<u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's motion for judgment as a matter of law, a new trial, and/or to set aside the verdict is DENIED. Defendant's motion for attorneys' fees is GRANTED IN PART, but the Court cannot make a determination as to amount. If Defendant intends to proceed on this issue, it must file a motion for attorneys' fees on the docket, supported by appropriate case law and the contemporaneous time records, within thirty (30) days of the date of this Memorandum and Order. Plaintiff's opposition will be due fourteen (14) days thereafter. Defendant's reply, if any, may be filed within seven (7) days of the opposition.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:    August __2__, 2013
          Central Islip, NY

28